124 N.J. Super. 105 (1973)
304 A.2d 777
ALLSTATE INSURANCE COMPANY, PLAINTIFF,
v.
FRANCIS P. McHUGH, JR., DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided May 2, 1973.
*107 Mr. William A. Garrigle for plaintiff (Messrs. Casby & Garrigle, attorneys).
Mr. Kelly T. Young for defendant (Messrs. McGuire, Green & Young, attorneys).
BISCHOFF, J.S.C.
This is a declaratory judgment action in which plaintiff Allstate Insurance Company (hereinafter Allstate) seeks a declaration of the limits of its liability under an uninsured motorist endorsement.
The facts are as follows:
On August 17, 1970 Frank McHugh was injured in an automobile accident with an uninsured motorist while operating a motor vehicle insured by Allstate under their Allstate "Crusader Policy," which policy was issued to his wife, Clare Q. McHugh. The policy covered a 1968 Ford Falcon and a 1966 Volkswagen. Two declaration sheets were issued by Allstate, both bearing the same policy number. One sheet bears on its face "ITEM 1 68 FALCON." The second sheet bears on its face "ITEM 2 66 VOLKSWAGEN." Both declaration sheets provide uninsured motorist coverage for bodily injury for $10,000 for each person and $20,000 for each accident. Separate premiums of $5 were paid for the uninsured motorist coverage (Coverage S).
The policy of insurance and Coverage S included therein conformed to N.J.S.A. 17:28-1.1.
It has been conceded for purposes of this proceeding that the injuries sustained by McHugh will justify an award in excess of $10,000.
McHugh contends that since separate but equal premiums were paid for Coverage S (uninsured motorist coverage) for each automobile in the same amount of $5, double coverage should be afforded to the insured, thereby making $20,000 rather than $10,000 the policy limit. He further argues that this type of insurance follows the individual rather than the vehicle and, therefore, if a premium is collected *108 for separate cars, the insureds under the policy are entitled to double coverage.
There is, however, increased risk incurred by the carrier when insuring separate motor vehicles under Coverage S. It is true that the named assured is covered under Coverage S regardless of the circumstances under which he is injured by an uninsured motorist. He has this coverage whether one, two or more vehicles are covered. Coverage S extends not only to the individual assured but also extends coverage to the vehicle under this situation.
Coverage S provides "the company will pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured vehicle * * *."
Persons insured are defined as "(b) any person while occupying an insured highway vehicle."
It is conceivable that Frank McHugh could be operating one vehicle with multiple passengers therein, his wife operating the second vehicle with multiple passengers therein. All the passengers in both vehicles are covered under Coverage S. This increased risk provides sufficient consideration and justification for charging a separate premium at the same rate for additional cars on the same policy.
In Castle v. United Pacific Insurance Group, 252 Or. 44, 448 P.2d 357 (Sup. Ct. 1968), the court stated, when faced with the argument that payment of double premiums affords double coverage, that "the premium paid and the coverage extended to each of the two automobiles was simply to provide this form of coverage for each of the insured vehicles." (Emphasis added).
McHugh further contends that there were two separate policies of insurance issued in this case. The argument is based upon the testimony which indicates two separate declaration sheets were issued, bearing, however, one and the same policy number. Only one policy was issued to which the two declaration sheets were attached. Bearing in mind the fact that only one policy number is used it is difficult *109 to follow the argument that two separate policies are involved. The argument that the issuance of two separate declaration sheets constitutes two separate policies was raised in Polland v. Allstate Ins. Co., 25 App. Div.2d 16, 266 N.Y.S.2d 286 (App. Div. 1966), where the court said:
We are constrained to disagree with appellant's contention that defendant's policy with the two attached supplemental sheets constitutes in law two policies, one covering each of the insured cars, and affords Thomas Haynes coverage in the sum of $20,000. The original "Crusader Policy" and the two endorsements formed one contract and each person injured is limited to $10,000. [266 N.Y.S.2d at 287]
See also, Otto v. Allstate Ins. Co., 2 Ill. App.3d 58, 275 N.E.2d 766 (App. Ct. 1971).
This court agrees with the reasoning of the Polland case and accordingly holds only one policy was issued.
McHugh, further relying upon the doctrine that ambiguities are to be resolved in favor of the insured, points to two clauses in the policy which he contends are in conflict. The first appears on page 3 of the policy under the heading "Limits of Allstate's Liability," which provides, "the limit of bodily injury liability stated on the supplemental page for Coverage A" as applicable to:
1. "each person" is the limit of Allstate's liability for all damages arising out of bodily injury sustained by any one person in any one occurrence; * * *."
The alleged conflict clause appears on page 16 and is contained in the section of the policy entitled "Conditions," paragraph 3:
When two or more automobiles are insured by this policy, the terms of this policy shall apply separately to each, * * *.
This same alleged ambiguity was dealt with in the following cases. Allstate Ins. Co. v. Schmitka, 12 Cal. App.3d 59, 90 Cal. Reptr. 399 (D. Ct. App. 1970); Polland v. *110 Allstate Ins. Co., supra; Pacific Indemnity Co. v. Thompson, 56 Wash.2d 715, 355 P.2d 12 (Sup. Ct. 1960); Allstate Ins. Co. v. Mole, 414 F.2d 204 (5 Cir.1969); Otto v. Allstate Ins. Co., supra. In each case this argument was rejected. The court in Polland had the following to say about the ambiguity raised by McHugh:
We find nothing uncertain or ambiguous in the provisions of the policy. In our view Condition "3" which provides that "when two or more automobiles are insured by this policy, the terms of this policy shall apply separately to each * * *" means nothing more than to render applicable the policy to whichever car insured under the policy (The Thunderbird or the Volkswagen) is involved in an accident. [266 N.Y.S.2d at 287]
When interpreting insurance policies it is settled law that ambiguities are to be resolved in favor of the insured. Hanover Insurance Group v. Cameron, 122 N.J. Super. 51 (Ch. Div. 1973); Bryan Const. Co., Inc. v. Employers Surplus Lines Ins. Co., 60 N.J. 375, 377 (1972); Bauman v. Royal Indem. Co., 36 N.J. 12 (1960). "And where the language of the policy is capable of two reasonable interpretations, the court will adopt that which permits recovery rather than the one which would deny coverage." State Farm Mut. Auto. Ins. Co. v. Cocuzza, 91 N.J. Super. 60, 63. However, "the court will not make a new agreement for the parties, and exceptions, exclusions, and reservations in a policy which are not inconsistent with public policy will be construed in accordance with their language and the usual rules governing the construction of insurance contracts." Cocuzza, supra, 91 N.J. Super. at 63.
The uninsured motorist coverage in McHugh's policy was offered to him by legislative mandate. N.J.S.A. 17:28-1.1 provides as follows:
No automobile liability policy or renewal of such policy, of insurance insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is *111 offered in connection therewith, in limits for bodily injury or death set forth in section 9 of chapter 174 of the laws of 1952 (C. 39:6-69), * * *. [Emphasis added]
N.J.S.A. 39:6-69 provides for application to the Unsatisfied Claim and Judgment Fund for payment of a judgment in the maximum amount of $10,000 for injury or death to one person in one accident or $20,000 for injury or death to more than one person in one accident. The section also provides that the Fund shall be liable for an amount which does not exceed the aforementioned limits. The limits in that statute are a guide for insurance companies who issue policies in our State and must now offer uninsured motorist coverage. They write their policies in reliance upon and in accordance with the public policy stated in N.J.S.A. 17:28-1.1 and 39:6-69.
The policy issued to McHugh by Allstate conforms to the public policy of our State as it is expressed in the statutes cited. I do not hold that there is any prohibition against an insurance company providing for greater limits of liability under Coverage S than those stated in the statutes. However, in light of the wording of N.J.S.A. 17:28-1.1 and the fact that the form of the uninsured motorist endorsement was approved by the Commissioner of Insurance (Obst v. State Farm Mut. Auto. Ins., 123 N.J. Super. 60 (Ch. Div. 1973)), any increase in the limits of liability should be expressed in the policy and not imposed upon an insurance company by a tortured construction of either the policy or the statute.
I cannot make a new agreement for the parties but must enforce the insurance agreement as I interpret it.
McHugh's final contention is that the holding of McFarland v. Motor Club of America Ins. Co., 120 N.J. Super. 554 (Ch. Div. 1972), is dispositive of the issue now before the court.
The McFarland case dealt specifically with two separate policies on two separate cars and involved the "other insurance" clause of one policy. The facts of McFarland were *112 that Vander McFarland was a passenger in a vehicle owned and operated by Andrew McFarland, which vehicle was involved in a collision with an uninsured vehicle. Andrew McFarland was insured by Allstate Insurance Company under a policy which provided for uninsured motorist protection to Vander McFarland. Allstate paid Vander the $10,000 policy limit. Vander carried a policy with defendant which provided uninsured motorist protection. Vander asserted a claim against defendant for whatever amount up to $10,000 his total damages exceeded the policy limit paid to him by Allstate ($10,000). Defendant's policy contained a clause which provided that the insurance coverage under its uninsured motorist protection should only apply as excess insurance over any other similar insurance available to the insured while the insured was occupying a vehicle not owned by him.
The court there held that the case was analogous to cases which have dealt with attempts by insurance companies to restrict omnibus coverage required by N.J.S.A. 39:6-46(a). The issue of "other insurance" clauses has not been raised in this case and is not involved.
The court in McFarland relied on Safeco Ins. Co. of America v. Jones, 286 Ala. 606, 243 So.2d 736 (Sup. Ct. 1970), which was also a case involving an "other insurance" clause. The policy behind voiding "other insurance clauses" is to prevent insurance companies from avoiding their statutorily imposed liability with a clause that they drafted which would subvert public policy. McFarland, supra. Here, Allstate admits that it is obligated to pay $10,000, which is the policy limit and what New Jersey law requires. Allstate is not attempting to go below what it is required by law to put into its policies.
Judge Francis concluded in the McFarland case:
* * * Where an insured's loss exceeds the limits of one policy, he may proceed against other available policies. The insurance company is, of course, free to dispute the validity of the asserted claim. But this court will not permit an insurer to escape its statutorily imposed *113 liability by including in its policy a limiting clause which prevents the insured from receiving coverage, he has paid for. Insofar as the "other insurance" clause under consideration purports to do so, it is violative of public policy and is invalid. [120 N.J. Super. at 563; Emphasis added]
Here, McHugh alleges that his losses exceed the limits of his policy; however, it has already been decided that the two declaration sheets issued by Allstate do not constitute two policies but only one. Therefore, there are no "other available policies" against which McHugh may proceed.
Some jurisdictions have permitted "stacking" or "pyramiding" of uninsured motorist coverage under circumstances analogous to those now before the court. See Lipscombe v. Security Ins. Co. of Hartford, 213 Va. 81, 189 S.E.2d 320 (Sup. Jud. Ct. 1972); Cunningham v. Insurance Co. of North America, 213 Va. 72 189 S.E.2d 832 (Sup. Jud. Ct. 1972); Sturdy v. Allied, 203 Kan. 783, 457 P.2d 34 (Sup. Ct. 1969); Rosson v. Allied Mutual Ins. Co., 203 Kan. 795, 457 P.2d 42 (Sup. Ct. 1969).
However, other jurisdictions under similar circumstances have denied "stacking" or "pyramiding" of coverage. See Allstate Ins. Co. v. Schmitka, supra; Castle v. United Pacific Insurance Group, supra; Arminski v. United States Fidelity, 23 Mich. App. 352, 178 N.W.2d 497 (App. Ct. 1970); Polland v. Allstate Ins. Co., supra; Pacific Indemnity Co. v. Thompson, supra; Martin v. Christiansen, 22 Utah 2d 415, 454 P.2d 294 (Sup. Ct. 1969); Kennedy v. American Hardware Mutual Ins. Co., 255 Or. 425, 467 P.2d 963 (Sup. Ct. 1970); Otto v. Allstate Ins. Co., supra.
I find that the cases which have denied "stacking" or "pyramiding" of coverage represent the better and more reasoned view and adopt it.
I accordingly conclude that plaintiff issued but one policy of insurance; that there is no ambiguity in the policy statements respecting uninsured motorist coverage under the circumstances with which we are here concerned, and that the limit of liability of plaintiff Allstate in this case is $10,000.