BOWEN *v.* FARMERS MUTUAL INSURANCE COMPANY OF MULBERRY ET AL.

[No. 14,932.   Filed January 28, 1936.]

*Cartwright, Wasson & Carr,* for appellant.

*William Robison* and *Gruber & Devol,* for appellees.

KIME, P. J.—This was an action brought by the appellant against the trustees of the appellee insurance company (the statute making them the proper parties to such suit), to recover upon an insurance policy issued by appellee insurance company, to the appellant, in the sum of $4,000. The complaint was in one paragraph, to which was filed an answer in three paragraphs, one general denial and two paragraphs of affirmative matter, both setting up allegations that the appellant had refused and neglected to pay premiums when assessed and because of that the policy had lapsed.

Trial was had by the court and facts were found specially. Conclusions of law were drawn from the facts found to the effect that the law was with the appellees and that appellant had forfeited all his right by failing to pay the assessed premiums, and that appellant take nothing by the action.

Errors assigned here are that the court erred in its first, second, and third conclusions of law and in overruling appellant's motion for a new trial. One of the

grounds for new trial is that the finding of facts is not sustained by the evidence.

The finding of facts discloses that appellant applied for a policy of insurance on the 12th day of September, 1928, and paid $13.00 for the privilege of becoming a member of the association; that on November 2, 1928, there was an assessment made, but since appellant had only been a member since the 12th day of September of that year no assessment for losses was made against him for that year. On the 2nd day of November, 1929, at the expiration of another loss period, an assessment was made against all the members of the association, including this appellant; that a notice was sent to the appellant setting out the amount of the assessment, by the secretary of the association, but there is no finding that appellant ever received this notice. Some thirty days later, as the by-laws provided, the treasurer of the association sent appellant a notice of the assessment levied against him, which appellant did receive. This last notice was mailed on the 29th day of January, 1930, and received by appellant on or about the 1st of February, 1930. On the 16th day of July, 1930, the property covered by the policy was destroyed by fire.

After receiving this notice on the 1st day of February until the fire on the 16th of July, appellant made no offer to pay and made no objection to the assessment as levied. The notice specifically said that if the amount of the assessment was not paid within ten days that the appellant would be unprotected.

The preamble of the constitution provided, "WHEREAS, The business of fire insurance, as conducted by incorporated companies, is attended with large expense, which, with the profit sought to be made, caused their premium rates to be fixed unnecessarily high; and believing that insurance may be simplified, its expenses reduced and the profits saved to the insured,"

and for such purpose associated themselves together in the co-partnership. This co-partnership was organized in 1868 and the present constitution and by-laws have been in effect since 1902. The constitution further provided that "The rates of insurance, classification of property, terms and conditions of policies, and adjustment of losses, may be fixed by the members in general meetings; but until they should do so, the Executive Committee shall have power to make all necessary provisions in regard thereto and for the general transaction of the business of the co-partnership." And further "The Executive Committee shall adopt such rules and regulations in regard to the adjustment of losses and the assessment of damages thereof, as may be fair and equitable." "It shall have the power to adopt such rules, regulations and by-laws as it may find necessary to carry out the object of this co-partnership; but the same may be annulled by the members at any annual meeting, and until so annulled they shall be in force against all members and parties." The eleventh clause of the constitution is as follows: "The premiums and all other receipts of the firm shall constitute a fund for the payment of the necessary and proper expenses of its business and for the payment of losses as they may occur. When such fund shall be found insufficient for the payment of any liability of the co-partnership, the Executive Committee shall make a general assessment upon all the policy holders, in proportion to the amount of insurance held by each at the time of the occurrence of a loss, in such proportions and sums that the aggregate of such assessments will be sufficient to discharge such liability; and, in making such assessment, any policy holder who may have become insolvent shall not be taken into consideration." It is this clause that the appellant contends was not followed and that because it

was not followed the assessment was not made in the manner provided.

The finding of facts discloses that the appellant wholly failed and refused to pay said assessment or any part or portion thereof and that there were, when this suit was brought, "between 9,000 and 10,000 members" of the company. The finding of facts further discloses that at a meeting of the Board of Directors on the 2nd day of November, 1929, that, "A motion was made and carried to make our assessment in the Fire Company 30¢ for all members who came in before Apr. 1, 1929, 25¢ for those who came in from Apr. 1 to May 15, 1929, 20¢ from May 15 to July 1, 10¢ from July 1 to Sept. carried." "In making the assessment of November 2, 1929, the Executive Committee of the defendant Company did not make a general assessment upon all of its policy holders in proportion to the amount of insurance held by each at the exact time of the occurrence of a loss, but the rate was arbitrarily fixed at 30¢ on each $100.00 for all insurance written by the defendant company before April 1, 1929; 25¢ on each $100.00 for all new insurance written from April 1 to May 15, 1929; 20¢ on each $100.00 for all new insurance written from May 15 to July 1, 1929, and 10¢ on each $100.00 for all insurance written from July 1 to September 1, 1929, and no assessment was levied, or attempted to be levied, against any member who took out his insurance on or after September 1, 1929."

The appellant would have us construe this contract exclusively upon the eleventh section of the constitution and says, in effect, that the assessment was not made "in proportion to the amount of insurance held by each at the time of the occurrence of a loss." There is nothing in the findings nor in the evidence from which there could be a determination made as to whether or not the assessment as levied was or was not in proportion to

the amount of insurance held by each at the time of the occurrence of a loss. There is no evidence of the amount of insurance held by each of the 9,000 or 10,000 members, nor is there any evidence from which the date of any loss could be determined.

The appellee established, by competent evidence, and it was so found by the court, that the assessment was to be 30¢ per $100.00 upon all members who came in before a certain time, 25¢ for those between that time and another specified date, and 20¢ from another specified period, and 10¢ for the fourth specified period. It is true that there was a finding of fact to the effect that this rate was arbitrarily fixed, but in determining the correctness of the conclusions of law we look to the entire finding. The construction of the contract of insurance can not be limited to a strict construction of the eleventh section or any other one section, but must be construed as a whole. The executive committee was given power to adopt such rules in regard to the adjustment of losses and the assessment of the damages as would be fair and equitable and that it might find necessary to carry out the objects of the copartnership. One of these objects was to reduce the expense of providing the insurance and thereby save that amount to those insured. Considering the other sections above quoted with the eleventh section we can not say that the conclusions of the trial court were erroneous nor that there was not sufficient evidence to sustain the necessary finding.

The appellant by his own affirmative act of disregarding the notice of the assessment from February 1 until July 16 placed himself in the position that we find him and the burden, therefore, was upon him to establish his right to a recovery. The court found as a fact that he has failed to discharge this bur-

den and there is evidence to sustain the court in this finding.

The constitution, as it seems from the above quotations, unquestionably gave the right to the board of directors to conduct the business as they did, which was equitable to all the members and without objection from any of them. At the time he became a member of this co-partnership such co-partnership had been in existence since 1868 and had conducted the business as they were then doing since, at least, 1902. He went into this co-partnership knowing that it was such and he is presumed to have known the customs and actions of the other partners, and is bound by such acts.

To reach the result that the appellant contends for here would be placing a technical construction upon only one section of the constitution and this should not be resorted to in order to bring about the result for which he contends. This result would be unfair to the other members of the co-partnership. To allow one to stand idly by when he knew all the facts and refuse to pay an assessment for some five months and then collect $4,000.00 under a highly technical construction of a single clause would be manifestly unjust.

The judgment of the Clinton Circuit Court is in all things affirmed and it is so ordered.