JONATHAN C. JEFFRIES, b/n/f HARVEY J. JEFFRIES *v.* WAYNE STEWART AND MOTOR VEHICLE CASUALTY COMPANY.

[No. 1-1073A183. Filed April 10, 1974. Rehearing denied May 15, 1974. Transfer denied August 26, 1974.]

*James E. Ayres, Wernle, Ristine & Milligan,* of Crawfordsville, for appellant.

*John T. Lorenz, Kightlinger, Young, Gray & DeTrude,* of Indianapolis, for appellees.

ROBERTSON, P.J.—In August, 1968, Jonathan Jeffries was injured as he attempted to jump on a dump truck driven by Wayne Stewart, an uninsured motorist. Jeffries incurred medical expenses in excess of $1500 as a result of this accident. In his action against Stewart, Jeffries joined his insurer, Motor Vehicle Casualty Company (insurer), when the insurer refused to pay Jeffries the amount he thought was owed him under the uninsured motorist and the medical payments provisions of his policy with insurer. The insurer did, however, pay to Jeffries $500 for his medical expenses. A jury verdict was rendered against Stewart for $30,000 on the issues of negligence and contributory negligence. Facts were stipulated to the court on the issues relating to Jeffries' insurance coverage. This appeal is brought by Jeffries from a judgment holding the limits of the insurer's liability to be $10,000 under the uninsured motorist provision and $500 under the medical payments provision.

Jonathan Jeffries' father, Harvey, held a single policy of insurance issued by the insurer covering three different vehicles—a 1965 Ford station wagon, a 1966 Ford pick-up truck, and a 1960 Ford sedan. This policy contained an uninsured motorist provision as required by the Indiana statute, IC 1971, 27-7-5-1, Ind. Ann. Stat. § 39-4310 (Burns Supp.

1973). The issue before us is whether the trial court's interpretation of the policy limits was correct, or whether the policy should be interpreted so as to provide for "multiple coverage," or "stacking" of policy limits. The latter interpretation would allow Jeffries uninsured motorist protection of $30,000, and medical payments coverage of $1500. We conclude that because of ambiguity in the policy, Jeffries is entitled to multiple coverage benefits.

The policy contains the following pertinent provisions:

"PART I—LIABILITY

\* \* \* \*

PART II—EXPENSES FOR MEDICAL SERVICES

"*Coverage C—Medical Payments:* To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, pharmaceuticals, eyeglasses, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services:

*Division 1.* To or for the named insured and each relative who sustains bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", caused by accident,

(a) while occupying the owned automobile,

(b) while occupying a non-owned automobile, but only if such person has, or reasonably believes he has, the permission of the owner to use the automobile and the use is within the scope of such permission, or

(c) through being struck by an automobile or by a trailer of any type.

*Limit of Liability:* The limit of liability for medical payments stated in the declarations as applicable to "each person" is the limit of the company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury as the result of any one accident.

\* \* \* \*

PART III—PHYSICAL DAMAGE

\* \* \* \*

PART IV—FAMILY PROTECTION COVERAGE

*Coverage J—Family Protection (Damages for Bodily Injury):* To pay all sums which the insured or his legal representative shall be legally entitled to recover as dam-

ages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile . . . .

*Definitions* . . . .

'Insured' means:

(a) The named insured and any relative . . . .

*Limits of Liability:*

(a) The limit of liability for family protection coverage stated in the declaration as applicable to "each person" is the limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

\* \* \* \*

## CONDITIONS

. . . .

4. *Two or More Automobiles:* When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each . . . ."

The amended declarations page states in part as follows:

"Item 4. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the Company's liability against each such coverage shall be as stated herein, subject to all terms of this policy having reference thereto:

| Car | Coverage C-Auto Medical Payments | Premiums |
|-----|----------------------------------|----------|
| 1 | $500 limits of liability each person | $4.00 |
| 2 | $500 limits of liability each person | $3.00 |
| 3 | $500 limits of liability each person | $2.00 |

\* \* \* \*

Coverage J-Family Protection

Limits of liability each person—$10,000, each accident—$20,000.

Premiums—$4.00"

Concerning uninsured motorist coverage, Jeffries contends that the "two or more automobiles" clause in the CONDITIONS section of the policy has the effect of creating three separate policies of insurance. Therefore, he continues, he is entitled to collect under each. He admits, as some courts have held, that such a clause does not have this effect of multiplying coverages where liability protection is involved, but he distinguishes that type coverage in that it attaches to and follows an insured *vehicle,* whereas uninsured motorist coverage attaches to the *person.* He further argues that since the contract specifies a coverage for each premium charged, and he in fact was charged three separate premiums for uninsured motorist protection, the insurer must provide a coverage for each premium charged. To allow the insurer to collect a premium for which no coverage was afforded, he continues, would be unconscionable. He asserts that at least the contract is subject to conflicting interpretations, is ambiguous, and must therefore be construed against the insurer.

The insurer's position is that any possible ambiguity in the policy is cleared up by the "limits of liability" clause which appears under Part IV of the policy, and is set forth in the amended declarations. The pertinent language in Part IV reads:

> "The limit of liability . . . stated in the declaration as applicable to 'each person' is the limit of the Company's liability for all damages . . . because of bodily injury sustained by one person as the result of any one accident . . . ."

The declarations specify the limits as $10,000 per person, $20,000 per accident. The insurer does not contend that the "other insurance" clause permits it to avoid stacking.

Although this is a case of first impression in Indiana, two recent decisions have dealt with closely related issues. In *Patton* v. *Safeco Insurance Co.* (1971), 148 Ind. App. 548, 267 N.E.2d 859, Patton was injured when the non-owned car in which he was a passenger was struck by a car driven by an uninsured motorist. Patton received payment under the un-

insured motorist provision of the policy of insurance covering the non-owned car in which he was riding, but his injuries were in excess of that recovery. He therefore sought to collect under the uninsured motorist provision of his own policy issued by Safeco. The Indiana Appellate Court, in holding that Patton was entitled to recover under his own policy, found the "excess-escape" clause of his policy to be in derogation of the Indiana uninsured motorist statute. In *Simpson v. State Farm Mutual Automobile Insurance Co.* (1970), S.D. Ind., 318 F.Supp. 1152, Pamela Simpson's mother owned two cars on which the insurer, State Farm, issued two separate policies of insurance. Pamela Simpson was injured while riding in a friend's car when it was struck by a car driven by an uninsured motorist. Her injuries exceeded $30,000. Miss Simpson recovered the full policy limit of $10,000 from the insurance company which afforded uninsured motorist coverage with respect to passengers in the vehicle in which she was riding and she then sought to recover under the two policies issued to her mother. The federal district court, in forecasting Indiana law, allowed Miss Simpson to recover $10,000 under each of those two policies. The court rejected the insurer's contention that the "other insurance" clause was a complete defense and found that clause to be contrary to the Indiana statute.

In both *Patton* and *Simpson* the courts noted that the Indiana uninsured motorist statute sets a minimum amount of coverage and does not place a limit on the total amount of recovery so long as that amount does not exceed the actual loss.

The specific issue we face is an extension of the one before the *Simpson* court. Instead of issuing separate contracts of insurance for each car, the insurer herein issued one contract covering three vehicles. Unlike *Simpson*, we do not base our decision on the Indiana statute, however. We are of the opinion that this case turns on the rule that when an insurance contract is ambiguous so as to be susceptible of more than one interpretation, that construction most favorable to the insured will be adopted. *See United*

*States Fidelity and Guaranty Co.* v. *Baugh* (1970), 146 Ind. App. 583, 257 N.E.2d 699; *O'Meara* v. *American States Insurance Co.* (1971), 148 Ind. App. 563, 268 N.E.2d 109. The test to be applied is whether or not reasonably intelligent men on reading the contract would honestly differ as to its meaning. *O'Meara, supra.* Applying this test we are compelled to find the insurance contract ambiguous.

Ambiguity arises because of conflict between the "two or more automobiles" clause and the "limits of liability" clause. The "two or more automobiles" clause, or separability clause as it is also known, effectuates a contract of insurance separately as to each car insured, and binds each policy with all the provisions and conditions of the single policy. Each of the three policies then contains a promise to pay the insured damages from bodily injury arising out of the ownership, maintenance or use of an uninsured auto. Additionally, each policy contains limits of $10,000 per person, $20,000 per accident. Therefore, with three policies in effect, Jeffries' person was protected to the extent of $30,000.

Several courts have rejected this interpretation with respect to liability coverage as opposed to uninsured motorist coverage. See *Allstate Insurance Co.* v. *Mole* (1969), 5th Cir., 414 F.2d 204; *Polland* v. *Allstate Insurance Co.* (1966), App. Div., 266 N.Y.S.2d 286. The separability provision was held to merely render the policy applicable to whichever of the insured cars was involved in an accident. Those cases are not applicable to the issue at hand, however, due to the distinction between liability protection and uninsured motorist protection. The former is dependent on the insured being found negligent in the operation of an insured vehicle. The latter—uninsured motorist coverage—arises from the insuring of a specific vehicle but recovery by the named insured is not dependent on his operating that vehicle. *See Mole, supra,* 414 F.2d at 207; 11 Am. Jur. Trials, Uninsured Motorist Claims § 8, p. 91. This is illustrated by the policy

before us. It promised to pay to the named insured and any relative damages from bodily injury arising out of the ownership, maintenance or use of an uninsured auto without regard to whether or not they were in an insured auto at the time of the accident.[1] Young Jeffries' injury arose out of the use of an uninsured vehicle—the dump truck—and in no way was any of the three autos insured under the policy involved in the accident. The separability clause, therefore, cannot be said to render the contract of insurance applicable to whichever of the insured cars was involved in the accident. Hence, we find the *Mole* and *Polland* analysis not pertinent to our inquiry into the effect of the separability clause herein. We similarly, reject those uninsured motorist cases dealing with the effect of the separability clause which rely on the *Mole* and *Polland* analysis. *See, e.g., Allstate Insurance Co. v. Shmitka* (1970), 12 Cal. App. 3d 59, 90 Cal. Rptr. 399; *Otto v. Allstate Insurance Co.* (1971), 2 Ill. App. 3d 58, 275 N.E.2d 766; *Allstate Insurance Co. v. McHugh* (1973), N.J. Super., 304 A.2d 777.

Consistent with this interpretation of the separability clause, and a factor which bolsters the argument for stacking, is the fact that a separate premium was paid by Jeffries for uninsured motorist protection on each car. The insurer argues that this coverage is separate and distinct from the specific vehicles covered by the policy because item four of the amended declarations shows that a single premium of $4.00 was charged which was not apportioned among the three autos. The record refutes the insurer's argument. The contract of insurance contains two amended declarations pages. One sets forth the coverages for only two of Jeffries' vehicles and is superseded by the other, issued after he acquired the third vehicle, which spells out the coverages for all three. The former shows a $3.00 charge for two vehicles for uninsured motorist coverage, the latter a $4.00 charge for three vehicles. In addition, there is the stipulated testimony of Mr. Lang, casualty manager

---

1. The policy actually creates two classes of insureds—1) the named insured and any relative, and 2) others. As to the latter, recovery is dependent on their occupying an insured auto at the time of the accident.

for the insurer, which shows that separate premiums of $2.00, $1.00 and $1.00 were charged.

The insurer alternatively argues that it gave consideration in the form of accepting increased risk for the extra premium charged per car and refers us to the *McHugh* case, *supra*. We do not deem it necessary to explore this contention for the reason that even if it could be shown that the insurer did give sufficient consideration for the extra charge, the conflict between the separability clause and the limits of liability clause remains.

The limits of liability clause in the uninsured motorist part of the policy set forth above provides that the amount stated in the declaration as applicable to each person is the limit of the insurer's liability to one person as the result of any one accident. Standing alone this provision would appear to be dispositive of the issue before us. However, the insurance contract must be construed as a whole and other provisions, possibly conflicting, cannot be ignored. *Bowen* v. *Farmers Mutual Insurance Co.* (1936), 101 Ind. App. 362, 199 N.E. 426. We cannot determine whether the limit of liability clause is a part of each of the three policies effectuated by the separability clause, or whether it is meant to apply to the single contract of insurance issued to Jeffries. The insurance contract herein being susceptible of more than one interpretation, we adopt that construction most favorable to Jeffries. He is entitled to recover $30,000 under coverage J, the uninsured motorist section.

Decisions from other jurisdictions suggest ways in which the ambiguity herein could have possibly been alleviated. Some, in denying stacking or multiple coverage, involved policies in which the separability clause by its express terms did not apply to the uninsured motorist provision. *See Morrison Assurance Co., Inc.* v. *Polak* (1969), Fla., 230 So.2d 6; *Ringenberger* v. *General Accident Fire & Life Assurance Corp.* (1968), Fla. App., 214 So.2d 376; *Dhane* v. *Trinity University Insurance Co.* (1973), Tex. Civ. App., 497 S.W.2d

323.[2] Another decision, in denying multiple coverage, involved a contract which expressly restricted the limit of liability to the amounts stated in the declarations regardless of the number of cars covered. *See Hilton* v. *Citizens Insurance Co. of New Jersey* (1967), Fla. App., 201 So.2d 904.

Turning to the medical payments coverage question, we find the same ambiguity caused by the limits of liability clause and the separability clause. The separability clause creates three separate policies, and young Jeffries' accident was within the terms of each—he was injured through being struck by an automobile. Three separate premiums were paid with respect to each of the insured vehicles. It is not clear if the limits of liability clause is merely a term in each of the three policies created by the separability clause, or whether it is meant to apply to the contract considered as a single policy which covers three cars. It is our opinion that reasonably intelligent men would also honestly differ as to the meaning of this part of the contract. *See O'Meara, supra.* Insurer must pay Jeffries an additional $1,000 in medical payments coverage. In so holding, we follow these decisions: *Kansas City Fire & Marine Insurance Co.* v. *Epperson* (1962), 234 Ark. 1100, 356 S.W.2d 613; *Government Employees Insurance Co.* v. *Sweet* (1966), Fla. App., 186 So.2d 95; *Dhane* v. *Trinity Universal Insurance Co.* (1973), Tex. Civ. App., 497 S.W.2d 323; *Virginia Farm Bureau Mutual Insurance Co.* v. *Wolfe* (1971), 212 Va. 162, 183 S.E.2d 145.

Here also, the insurer could have resolved the ambiguity by providing that the $500 limit for each person was the limit of the company's liability for all medical expense incurred by each person, regardless of the number of autos covered by the policy. *See Hansen* v. *Liberty Mutual Fire Insurance Co.* (1967), 116 Ga. App. 528, 157 S.E.2d 768.

---

2. Some courts, however, found ambiguity and permitted multiple coverage despite the exclusion of the separability clause from the uninsured motorist provisions of the policy. See *Sturdy* v. *Allied Mutual Insurance Co.* (1969), 203 Kan. 783, 457 P.2d 34; *Lipscombe* v. *Security Insurance Co. of Hartford* (1972), 213 Va. 81, 189 S.E.2d 320.

The judgment of the trial court is reversed and the cause is remanded for such further action that is not inconsistent with this opinion.

Judgment reversed and remanded.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 309 N.E.2d 448.