CUNNINGHAM et al., Respondents v.
WESTERN CASUALTY & SURETY CO., Appellant

(243 N.W.2d 172)

(File No. 11740. Opinion filed June 23, 1976)

**T. F. Martin** of **McCann, Martin & Mickelson**, Brookings, for plaintiffs and respondents.

**Timothy J. Nimick** of **Woods, Fuller, Shultz & Smith**, Sioux Falls, for defendant and appellant.

DUNN, Chief Justice.

This declaratory judgment action on an insurance policy was commenced May 6, 1974. It deals with the question of whether or not insured parties covered by uninsured motorist coverage as to two different cars but by one insurance policy can recover damages up to the total limit arrived at by allowing claims under each uninsured motorist provision. The lower court found that such stacking or pyramiding was appropriate. We disagree.

In August of 1973, Alease B. Pittenger and her husband Kenneth Pittenger were involved in an automobile accident with an uninsured motorist in the state of Arizona; the accident resulted in the death of Alease Pittenger and injury to Kenneth Pittenger. At the time of the accident, Kenneth Pittenger had in full force and effect an insurance policy, No. H 414 29 30, with defendant. That policy, in section III, included protection against uninsured motorist accidents and specifically covered two different vehicles—a 1973 Chevrolet ½ ton pickup and a 1969 Rambler four-door sedan—owned by Kenneth Pittenger. Separate premiums, equal in amount, were paid for uninsured motorist coverage for each vehicle.

Following the initiation of this action in Brookings County, Kenneth Pittenger died from causes unrelated to the accident in question. Liane Cunningham and Ronald Pittenger as co-executors of the estates of Kenneth and Alease Pittenger were substituted as plaintiffs. The case was submitted to the court on a stipulation of facts. It was agreed that damages to Alease Pit-

tenger would be in the sum of $25,000 and damages to Kenneth Pittenger would be in the sum of $5,000, which damages are exclusive of damages to personal property involved in the accident and exclusive of doctor, medical and funeral bills.

The policy in question provides coverage of $15,000 per person and $30,000 per accident as to uninsured motorist coverage. Plaintiffs contend that since the one policy covered two vehicles and since separate premiums were charged for uninsured motorist coverage on each vehicle "stacking" of coverage is in order and the effective limit of the uninsured motorist coverage is $30,000 per person and $60,000 per accident. Defendant insurance company asserts that stacking is prohibited by the specific terms of the policy and that its liability is limited to $15,000 per person and $30,000 per accident.

This is a case of first impression in South Dakota. In Westphal v. Amco Insurance Co., 1973, 87 S.D. 404, 209 N.W.2d 555, this court held that an "other insurance" provision did not preclude a person from collecting from his own insurance policy if his total damages exceeded the policy limits for the automobile in which he was riding when his injuries occurred. This is an entirely different situation from the case at bar where plaintiffs are attempting to stack the uninsured motorist limits of one vehicle onto the limits of the vehicle in which their decedents were actually riding when the accident occurred.

While the holding in Westphal is sound and is followed by the majority of jurisdictions, we do not believe that it should be extended to the facts of this case. Defendant is not seeking to avoid paying the amounts required by SDCL 58-11-9. That statute as it was then in effect stated:

"No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemen-

tal thereto in limits for bodily injury or death set forth in § 32-35-70, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom."

And SDCL 32-35-70 provided in pertinent part:

" * * * fifteen thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, thirty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident."

Defendant acknowledged its liability for the amount required by the statute and sought to limit its liability to that amount in clear and unambiguous terms in the policy.

Condition 5. "*Coverage K*: The limit of liability for coverage K stated in the declarations as applicable to 'each person' is the limit of The Western's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of The Western's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident."

While it is true that the decedents paid a separate premium for the uninsured motorist coverage on each vehicle, there is an increased risk because both vehicles could be traveling the highways at the same time. Further, we see nothing in SDCL 58-11-9 which requires the stacking of the policy coverages for two separate vehicles. The insureds got exactly what the policy said they would. The accident happened while they were driving

the Rambler, and they can receive the policy limits that apply to the Rambler. Had both the Pittenger vehicles been involved in accidents involving uninsured drivers, the policy would allow recovery up to the limits on each vehicle. In Allstate Insurance Company v. McHugh, 1973, 124 N.J.Super. 105, 304 A.2d 777, the court considered a case with facts almost identical to those presented here. The court stated:

"It is conceivable that Frank McHugh could be operating one vehicle with multiple passengers therein, his wife operating the second vehicle with multiple passengers therein. All the passengers in *both* vehicles are covered under Coverage S. This increased risk provides sufficient consideration and justification for charging a separate premium at the same rate for additional cars on the same policy." (emphasis theirs) 304 A.2d 778.

Although there is a split of authority, appeal courts in other states have not allowed this type of stacking in the following cases: Holland v. Hawkeye Security Insurance Company, 1975, Iowa, 230 N.W.2d 517; Westchester Fire Insurance Company v. Tucker, 1974, Tex., 512 S.W.2d 679; Allstate Insurance Company v. McHugh, supra; Castle v. United Pacific Insurance Group, 1968, 252 Or. 44, 448 P.2d 357; Otto v. Allstate Insurance Company, 1971, 2 Ill. App.3d 58, 275 N.E.2d 766; Doerpinghaus v. Allstate Insurance Company, 1971, 124 Ga. App. 627, 185 S.E.2d 615; and Morrison Assurance Company, Inc. v. Polak, 1969, Fla., 230 So.2d 6. It is interesting to note that the Texas Supreme Court before deciding Tucker, supra, had previously held that stacking of uninsured motorist policies was allowed where an "other insurance" provision was involved. However, in Tucker, the court held that stacking coverage on two separate vehicles would not be permitted.

We do not believe that the Westphal decision needs further expansion by this court. Nor can we see where a different result is required by SDCL 58-11-9. We think that the insurance policy should be interpreted as it is written with the applicable limits being $15,000/$30,000 for the vehicle involved in the accident.

Reversed.

WOLLMAN and COLER, JJ., concur.

WINANS, J., dissents.

WINANS, Justice (dissenting).

Although this is a case of first impression for this court, it is not the first time we have been called upon to construe the provisions of our uninsured motorist law as found in SDCL 58-11-9. In Westphal v. Amco Insurance Co., 1973, 87 S.D. 404, 209 N.W.2d 555, we found that SDCL 58-11-9 requires a minimum uninsured motorist coverage to be offered with each policy and that the insurer could not escape the mandate of the statute with an "other insurance" provision. We recognized that stacking of applicable uninsured motorist coverages was permissible to achieve the required minimum coverage. In my opinion the majority opinion today undermines what this court recognized as proper in Westphal because the effect of the decision is to allow the insurer to limit its liability to less than the minimum required by statute.

In Westphal, supra, this court allowed the passenger in a car struck by an uninsured motorist to recover from his own insurer, even though he was also covered by the driver's uninsured motorist provision. We held that the limitation provided in the "other insurance" clause of the policy was invalid as an attempt to avoid the minimum uninsured motorist coverage mandated by statute. We adopted as our own the rule in Safeco Ins. Co. of America v. Jones, 1971, 286 Ala. 606, 614, 243 So.2d 736, 742, as set out in Blakeslee v. Farm Bureau Mutual Ins. Co. of Mich., 1971, 388 Mich. 464, 201 N.W.2d 786, when we said:

> " 'We hold that our statute sets a minimum amount
> for recovery, but it does not place a limit on the total
> amount of recovery so long as that amount does not exceed the amount of actual loss; that where the loss exceeds the limits of one policy, the insured may proceed
> under other available policies; and that where the
> premiums have been paid for uninsured motorist

coverage, we cannot permit an insurer to avoid its statutorily imposed liability by its insertion into the policy of a liability limiting clause which restricts the insured from receiving that coverage for which the premium has been paid.' "

By statute, no automobile liability insurance policy for any vehicle registered or principally garaged in South Dakota shall be issued without uninsured motorist coverage as to each vehicle insured. "No policy * * * shall be delivered or issued for delivery * * * with respect to any motor vehicle * * * unless coverage is provided therein * * * for the protection of persons insured thereunder * *." SDCL 58-11-9. I understand this to be mandatory language requiring that uninsured motorist coverage in the minimum limit set out by statute be provided not collectively for all cars covered by the policy but separately as to each and every vehicle listed therein. The analogy to Westphal is clear. In that case two separate policies of insurance covered the same accident. The passenger's insurance provided for coverage when the insured was in other than the vehicle described in the policy, but sought to limit its liability by use of the "other insurance" clause. This we held to be invalid as an attempt to avoid the minimum coverage mandated by statute. Premiums had been paid on both policies and the injured passenger was entitled to stack the coverage of the two policies to recover up to the actual loss suffered.

Here we are faced with one policy providing uninsured motorist coverage for two described vehicles owned by the same individual. The policy provides identical coverage to the insured for each described vehicle. Uninsured motorist coverage is extended to the insured for any accident when the insured is in an "insured vehicle." As defined by the policy, "insured vehicle" is a term that applies to both of the covered vehicles. Because the plaintiff was injured while operating an insured vehicle, it seems logical that both policies would afford him protection.

The insurer seeks to avoid this result by placing the following limitation in its policy:

> Condition 18. *Other Automobile Insurance in The Western*: "With respect to any occurrence, accident or loss to which this and any other automobile insurance policy issued to the named insured by The Western also applies, the total limit of The Western's liability under all such policies shall not exceed the highest applicable limit of liability under any one such policy."

It is clear that by the above provision the insurer intends to limit its liability to a minimum. Westphal makes clear that the minimum cannot fall below the amount dictated by statute, and yet in this instance that is exactly what the majority allows the insurer to do.

SDCL 58-11-9 demands a minimum of uninsured motorist coverage on each vehicle insured and the consequence of such a mandate is that the purchaser of insurance must receive at least that much coverage. The Pittengers were covered by the uninsured motorist provisions for Auto No. 1 for which a premium was paid and by the uninsured motorist provisions for Auto No. 2 for which a separate premium was paid. Our law required that the insurers offer this coverage; once offered, it could not be diminished by limiting clauses in the policy which were an attempt again to supply less than the statute called for. Were I to accept the insurer's position I would in effect be saying that where more than one vehicle is insured, less uninsured motorist coverage is required than what the statute demands. This I cannot do.

Plaintiff was injured while in an insured vehicle. Compensation should be afforded under both coverages, just as coverage was afforded under both policies in Westphal. I can see no distinction merely because the coverage extended in this case is provided by one policy covering two insured vehicles while in Westphal two separate policies provided coverage. Separate premiums have been paid for both coverages, just as they had been paid on both policies in Westphal. Condition 18, which seeks to limit the insurer's liability in this case, is simply an "other insurance" clause as was invalidated in Westphal, the only distinction being that the other insurance in this case is provided by the same in-

surer. It constitutes an attempt to provide less coverage than is demanded by statute.

The insurer contends that Plaintiffs are entitled to no more recovery by virtue of the double premium they have paid for coverage the insurer was required to offer than they would have been entitled to had they insured only one vehicle and paid only one premium. In this regard it has been well stated:

> "[w]hen we pay a double premium we expect double coverage. This is certainly not unreasonable but, to the contrary, is in accord with general principles of indemnity that amounts of premiums are based on amounts of liability. Defendant argues that what plaintiff is seeking amounts to pyramiding coverage but nothing is said about pyramiding the premiums which effectuate the coverages. We would not be understood as implying that an injured insured can pyramid separate coverages in the same policy so as to recover more than his actual loss." Sturdy v. Allied Mutual Insurance Company, 1969, 203 Kan. 783, 457 P.2d 34.

Because I see little difference between one policy on several vehicles when separate premiums are paid and separate policies on those vehicles by different insurers, at least with regard to the impact of their uninsured motorist provisions, I think it appropriate to echo again the words of Mr. Chief Justice Knutson of the Minnesota Supreme Court in a case concerning four policies with uninsured motorist provisions:

> "[T]he fact that the legislature required an uninsured-motorist provision in all policies, added to the fact that a premium has been collected on each of the policies involved, should result in the policyholder's receiving what he paid for on each policy, up to the full amount of his damages. It is true that such holding results in permissible recovery exceeding what he would have received if the uninsured motorist had been insured for the minimum amount required under our Safety Responsibility Act. But if the question must be resolved

on the basis of who gets a windfall, it seems more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium." Van Tassel v. Horace Mann Insurance Company, 1973, 296 Minn. 181, 207 N.W.2d 348.

The public policy expressed in our uninsured motorist statute requires that coverage, in minimum amounts at least, be provided as to each car, or "with respect to any motor vehicle" covered by the policy. One who pays double premiums expects double coverage. As the New Jersey Supreme Court has held:

"When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and *their policies should be construed liberally in their favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'* " Kievit v. Loyal Protective Life Ins. Co., 1961, 34 N.J. 475, 170 A.2d 22 (emphasis ours).

In Barbin v. United States Fidelity and Guaranty Co., 1975, La., 315 So.2d 754, the Louisiana Supreme Court considered an issue quite similar to the one before the court now, and held:

"[T]he clear intent of Graham [v. American Casualty Co., 261 La. 85, 259 So.2d 22], Deane [v. McGee, 261 La. 686, 260 So.2d 669] and the other cited cases is to the effect that if a plaintiff is issued insurance on two or more automobiles, pays premiums for two or more different uninsured motorist coverages, and sustains damages thereunder in excess of the mandatory minimal coverage, he can 'stack' coverages and recover his damages. * * * This intent should not be circumvented merely because separate vehicle coverages are placed in one policy, rather than in multiple policies."

In my opinion to disallow stacking of coverages in this situation is to diminish the effect of our ruling in Westphal.

Appellant contends that the principle I propose today would create astronomical liability for insurance companies in direct relation to the number of vehicles covered by any one insurance policy. Appellant suggests that a fleet of ten vehicles, all covered by one policy, might be on the road at the same time and each might be involved in an accident. The result would be to multiply each of the ten recoveries claimed by ten uninsured motorist policy coverages. This might well be true in the abstract but I am cognizant of the fact that the laws of probability rule against such an unfortuitous concatenation of circumstances. It is, after all, the likelihood that certain events will or will not transpire that is calculated when premium rates are fixed and I deem such hypothetical situations to be most unlikely.

Even should the foregoing be within the range of possibility it must be borne in mind that the recovery of the insured is still limited by the actual damages. My rationale does no more than to provide for the indemnification of the insured within the combined limits of the stacked policies. Should he be covered by ten uninsured motorist clauses, allowing an aggregate coverage of $150,000 for one person, and his damages are only $25,000 then $25,000 will be the limit of his recovery. Along these lines I note with Prof. Widiss:

> "that if this approach to indemnification is adopted, an insured who is covered by more than one uninsured motorist endorsement will be better off than he would have been had he been injured by a negligent motorist carrying the minimum coverage specified by the financial responsibility laws. However, the conclusion which insurance companies draw from this — that they should be allowed to reduce their liability — does not necessarily follow. A premium has been paid for each of the endorsements and coverage has been issued. It seems both equitable and desirable to permit recovery under more than one endorsement until the claimant is fully indemnified." Widiss, A Guide to Uninsured Motorist

Coverage, 1969, § 2.70, p. 112.

It is my opinion that the cases allowing stacking in this type of instance represent the preferred approach. Our ruling in Westphal as well as SDCL 58-11-9 dictates that the coverages in this case should be stacked and recovery allowed up to the actual loss. Therefore, I would affirm the decision of the trial court.